# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: January 27, 2026

```
*  *  *  *  *  *  *  *  *  *  *  *  *
GEORGE YAUNERIDGE,                    *
and JULIA YAUNERIDGE,                 *
on behalf of their minor son, J.Y.    *
                                      *
              Petitioner,             *           No. 21-1789V
                                      *
v.                                    *           Special Master Gowen
                                      *
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
              Respondent.             *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

*Michael A. Firestone,* Marvin Firestone, MD, JD and Associates, San Mateo, CA, for petitioner.
*Nina Ren,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On April 15, 2025, George Yauneridge and Julia Yauneridge, on behalf of their minor son, J.Y., filed a motion for final attorneys' fees and costs. Petitioner's Motion for Attorneys' Fees ("Pet'r.") ("Fee App.") (ECF No. 31). For the reasons set forth below, I hereby **GRANT** petitioners' motion and award $105,853.22 in final attorneys' fees and costs.

### I. Procedural History

Petitioners filed their claim for compensation in the National Vaccine Injury Compensation Program[2] on September 1, 2021, alleging that their son, J.Y. developed

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

supraventricular tachycardia ("SVT") as a result of receiving the HiB, Hep A, DTap, and Varicella vaccines on August 17, 2020. Petition (ECF No. 1). Petitioners filed medical records to support their claim on September 3, 2021. Petitioner's Exhibits ("Pet'r Exs.") 1-9 (ECF no. 7).

The undersigned issued an initial order March 4, 2022, after the case had completed the Pre-Assignment Review ("PAR') Process. Initial Order (ECF No. 13). On May 17, 2022, respondent filed a status report identifying missing medical records and petitioner was ordered to file updated records by June 21, 2022. Scheduling Order, non-pdf May, 18, 2022. Petitioner filed updated medical records and a statement of completion on August 11, 2022. Pet'r Exs. 13-17 (ECF No. 20); Statement of Completion (ECF No. 20). Petitioner also filed a motion for an extension of time to file the remaining records, which I granted on August 12, 2022. Petitioner filed outstanding medical records on October 11, 2022. Pet's Ex. 18 & 19 (ECF No. 21).

Petitioners were ordered to file an expert report by July 8, 2024. *See* Scheduling Order, non-pdf May 3, 2024. Petitioner filed three motions of extensions of time between July 8, 2024 and September 9, 2024. *See* Pet'r Mot. Extension of Time (ECF Nos. 23, 24, & 25). On September 20, 2024, petitioners filed a status report stating that "the experts have raised concerns about their ability to provide a more likely than not opinion on causation, especially in light of a more definitive diagnosis of Wolff-Parkinson-White ("WPW") syndrome," and that petitioners' counsel is making a recommendation for voluntary dismissal of the claim. Pet'r Status Report (ECF No. 26).

Petitioners filed a motion for a voluntary dismissal on October 18, 2024, which the undersigned granted on October 21, 2024. Decision (ECF No. 28).

Petitioners filed the instant motion for final attorneys' fees and costs on April 15, 2025. Pet'r Fee App. (ECF No. 31). Petitioners are requesting a total of $111,670.82 in attorneys' fees and costs and for $10,050.00 in costs they incurred. Pet'r. Fee App. at 1-2. Petitioner is requesting a total of $65,784.65 in attorneys' fees and $45,886.17 in attorneys' costs. *Id.* at 2. Petitioners' state that they paid $10,050.00 for medical expert retainers. *Id.* at 37.

Respondent filed a response to petitioners' motion on April 16, 2025, stating that "the special master may award attorneys' fees and costs if a petitioner does not receive compensation," if the petition was brought in good faith and with a reasonable basis. Respondent's Response (ECF No. 32). Respondent also stated that he defers to the special master to determine if the petition was brought in good faith and with a reasonable basis, and if the special master finds those requirements are met, to exercise discretion to determine a reasonable award for attorneys' fees and costs. *Id.* at 4-5.

Petitioner did not file a reply. This matter is now ripe for adjudication.

## II.    Legal Standard for Attorneys' Fees and Costs

The Vaccine Act provides that the special master shall award "reasonable" attorneys' fees and costs for any petition that results in an award of compensation. § 300aa–15(e)(1). In this

case, petitioner was awarded compensation pursuant to a joint stipulation. Therefore, she is entitled to an award of reasonable attorneys' fees and costs.

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under the lodestar approach, a court determines the number of hours reasonably expended in the case and reasonable hourly rates for the attorney(s) involved. Id. at 1347-58 (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court multiplies those numbers and may adjust the sum upwards or downwards based on other specific findings.

Petitioners "bea[r] the burden of establishing that the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993). A request for attorneys' fees should be supported by contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgement, [is] reasonable for the work done." Id. at 1552. The special master may reduce a request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.,* 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

The "reasonableness" requirement also applies to costs. *Perreira v. Sec'y of Health & Hum. Servs.,* 27 Fed. Cl. 29, 34 (1992). A request for costs incurred by either counsel or the petitioner himself should include supporting documentation, such as invoices from experts and itemized receipts. Like a request for attorneys' fees, a request for costs may be reduced *sua sponte* and based on the special master's experience and discretion.

### a. Hourly rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Avera, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs*., 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. Id. This is known as the Davis County exception. *Hall v. Sec'y of Health & Human Servs.,* 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Succinctly stated, the forum rate is the "default rate" unless there is a "very significant difference" between local and forum rates. For cases in which forum rates apply, *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.,* No 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) motion for recons. denied, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016 and from 2017-2025, which can be accessed online.

Petitioner is requesting a total of $64,784.65 in attorneys' fees.  Pet'r. Fees App. at 2. The attorneys and paralegals at Marvin Firestone's law firm have been awarded forum rates in the past and such forum rates will apply.  In this request, petitioner is asking for increased hourly rates for work performed in 2024 for the following staff: Mr. Timothy O'Hara, Mr. Robert Turbow, post-bar law-clerk Mr. Andrew Dibbern, and paralegal, Ms. Casey Nolan. Additionally, petitioner is requesting that attorney Mr. Michael Firestone be awarded an hourly rate of $500.00 per hour for work performed in 2025.  Mr. Firestone and Mr. O'Hara have been awarded these rates by other special masters, and therefore, these rates appear to be reasonable. *See Sharpe v. Sec'y of Health & Hum. Servs.,* 21-1228V, 2025 WL 1927609 (Fed. Cl. Spec. Mstr. June 13, 2025) (awarding Mr. Michael Firestone a rate of $500.00 per hour for 2025 and an hourly rate of $530.00 for Mr. Timothy O'Hara for work performed in 2024); *see also Ramos ex rel. v. Sec'y of Health & Hum. Servs.,* No. 20-583V, 2024 WL 5297984, at *3-4 (Fed. Cl. Spec. MStr. Dec. 12, 2024) (awarding Mr. Michael Firestone an hourly rate of $446.25; awarding Mr. Jeff Lewis an hourly rate of $204.00 for 2024; and awarding Ms. Patricia Barrick an hourly rate of $240.00 for 2024).

However, the hourly paralegal rate requested for paralegal Pat Barrick in 2022, 2023, 2024, and 2025 exceed the Vaccine Program's published hourly range for paralegals for those years, and require adjustments.  Accordingly, I will compensate all paralegal work performed in 2022 and 2023 at the rate of $186.00; work performed in 2024 at the hourly rate of $197.00 per hour; and work performed in 2025 at the rate of $212.00 per hour.  These rates are consistent with the Vaccine Program's published range for paralegals and have been awarded to the Firestone firm in the past.  *See Kinsey v. Sec'y of Health & Hum. Servs.,* No. 23-1553V, 2025 WL 3880509, at *2 (Fed. Cl. Spec. Mstr. Dec. 5, 2025).  **This will result in a reduction of attorneys' fees by $905.10.**

### b.  Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348.  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The undersigned has reviewed the submitted billing statements, and the invoices provided sufficient detail as to the work performed and the time expended.  Respondent did not indicate any of the billing entries to be objectionable, and upon review, none appear to be objectionable.

**Accordingly, petitioners are awarded a final attorneys' fees in the amount of $64,879.55, which includes the paralegal hourly rate adjustment.**

### c. Attorneys' Cost

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992). Petitioner requests a total of $45,886.17 in costs. Fee App. at 2. The majority of these costs appear to be associated with retaining experts, including Dr. Michael Eldar ($21,000.00), Dr. Efren Rael ($14,125.00 for 28.21 hours of work), Dr. Cyrus Rangan ($2,000.00) and Dr. Yehuda Shoenfeld ($14,000 for 28 hours of work). The total costs of experts in this matter is $51,125.00, which petitioners paid $10,000. The remaining $4,761.17 in attorneys' costs is associated with obtaining medical records, the court filing fee, postage, and obtaining medical literature.

The costs associated with obtaining medical records, the filing fee, postage, and medical records are typical costs covered in the Vaccine Program and are well documented. Petitioners' attorneys shall be reimbursed in full for these costs.

However, it is the overall amount of expert fees in this case that are unreasonable given the outcome of the case, and the fact that the medical records the experts reviewed had references to a possible underlying anatomical condition as the cause of J.Y,'s condition. Compensation for experts that expend "hours that are excessive, redundant, or otherwise unnecessary," should not be awarded. *Kuperus v. Sec'y of Health & Hum. Servs.,* No. 01-60V, 2006 WL 3499516, at *3 (Fed. Cl. Spec. Mstr. Nov. 17, 2016). "As with attorneys' fees, time expended by medical experts should be reasonably allocated." *Kantor ex rel. Kantor v. Sec'y of Health & Hum. Servs.,* No. 01-6798V, 2007 WL 1032378, at *2 (Fed. Cl. Spec. Mstr. Mar. 21, 2007). "The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'" *Hines ex rel. Sevier v. Sec'y of Health & Hum. Servs.,* 22 Cl. Ct. 750, 754 (1991) (quoting *Griffin & Dickson v. U.S.* 21 Cl. Ct. 1, 11 (1990)).

### 1. Dr. Yehuda Shoenfeld's Expert Costs

Dr. Shoenfeld was retained in November 2023 and based on his invoice, performed 28 hours of work. However, his invoice includes five entries that span the time between November 2023 and August 2024, but are billed in blocks. For example, from December 16th through December 24th 2023, Dr. Shoenfeld spent 10 hours writing the first draft of a report. Pet'r. Fee App. at 64. He spent six hours between May 5th and May 28th writing the "final draft." *Id.* These entries amount to block billing and Dr. Shoenfeld has been warned about block billing by other special masters and it has led to reductions in fees. *See Orm v. Sec'y of Health & Hum. Servs.,* No. 14-257V, 2024 WL 1856679, at *5 (Fed. Cl. Spec. Mstr. Apr. 2, 2024); *see also Laderer v. Sec'y of Health & Hum. Servs.,* No. 09-97V, 2016 WL 3044838, at *6 (Fed. Cl. Spec. Mstr. Apr. 20, 2016) (reducing Dr. Shoenfeld's fees by ten percent due to block billing).

Further, it appeared that Dr. Shoenfeld was preparing to offer his opinion on vaccine causation based on either an aluminum adjuvant induced autoimmunity or aluminum-adjuvant

toxicity theory, which he has posited before in numerous cases in the Vaccine Program. *See Decker v. Sec'y of Health & Hum. Servs.,* No. 15-17V, 2020 WL 7889059, at *33-34 (Fed. Cl. Spec. Mstr. Dec. 14, 2020) (rejecting Dr. Shoenfeld's adjuvant induced autoimmunity mechanism and aluminum toxicity mechanism as a sound and reliable theory for inducing an autoimmune condition); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 10-578V, 2016 WL 4917548, at *7 (Fed. Cl. Spec. Mstr. Aug. 18, 2016) (rejecting Dr. Shoenfeld's expansive medical theory that "any adjuvant is capable of causing any autoimmune disease."); *Brayboy v. Sec'y of Health & Hum. Servs.,* No. 15-183V, 2021 WL 4453146, at *12-13 (characterizing Dr. Shoenfeld's aluminum adjuvant-induced toxicity as vague and fails to satisfy *Althen* prong one); *Rowan v. Sec'y of Health & Hum. Servs.,* No. 10-272V, 2014 WL 1713184, at *8 (Fed. Cl. Spec. Mstr. Mar 24, 2017) (observing that the ASIA theory "is, at a minimum, incomplete and preliminary—and therefore unreliable from an evidentiary standpoint.").

Given Dr. Shoenfeld's experience and knowledge in the Vaccine Program, the amount of time spent, along with the block billing is unreasonable and excessive. **The undersigned finds that a ten percent reduction in final fees for Dr. Shoenfeld in this matter is warranted, resulting in a reduction for Dr. Shoenfeld of $1,400.00.**

### 2.  Dr. Michael Eldar's Expert Costs

Additionally, a reduction of expert fees is also warranted for Dr. Michael Eldar.  Dr. Eldar charged a total of $21,000.00 for 46 hours of work performed between November 2023 and August 2024.  As this case involved a cardiac condition, engagement with a cardiologist, such as Dr. Eldar is reasonable.  However, the total amount of time spent on this matter and the invoice which includes block billing is excessive and unreasonable.  *See* Pet'r. Fee App. at 95. From November 17th through December 10th, 2023, Dr. Eldar spent 10 hours "reading the material," and then from December 15th from January 20, 2024, he spent another 10 hours performing a "literature search."  *Id.*  He spent a total of 18 hours drafting and revising his expert report, from December 28, 2023 through August 3, 2024.  *Id.*  **Thus, the undersigned finds that a ten percent reduction in expert fees for Dr. Eldar is warranted, resulting in a reduction of $2,100.00.**

### 3.  Dr. Efren Rael's Expert Costs

In July 2024, petitioner's counsel engaged Dr. Rael, another immunologist, to review petitioner's claim and Drs. Shoenfeld and Rael's theory of vaccine causation.  Pet'r. Fee App. at 128.  It is unclear at this point in the litigation that petitioner's counsel engaged Dr. Rael, another immunologist, when Dr. Shoenfeld had already been retained and provided his opinion on vaccine causation.  Dr. Rael billed a total of 28.25 hours at an hourly rate of $500.00, for a total of $14,125.00.  Dr. Rael's invoice is far more detailed than Drs. Shoenfeld's or Eldar's invoices and provides specific dates, work performed, and hours assigned to each item.

Dr. Rael was only engaged for one month in this matter—July 2024, and it is not clear from the fee application why it was necessary to engage another immunologist to "concur with the theory," being proposed by Drs. Shoenfeld and Eldar.  *See* Pet'r. Fee App. at 3.  Further, the undersigned cannot find any other Vaccine case where Dr. Rael has served as an expert.  **Thus,**

**the undersigned finds the overall number of hours spent on this matter by Dr. Rael is excessive and unreasonable, warranting a ten percent reduction in expert fees, resulting in a reduction of $1,412.50.**

### 4. Dr. Cyrus Rangan

Petitioner's also request reimbursement for fees associated with Dr. Cyrus Rangan, a toxicologist, for a total of $2,000.00. Pet'r. Fee App. at 140. Dr. Rangan charged an hourly rate of $500.00 and performed a total of 4 hours. On its face, Dr. Rangan's fee of $2,000.00 appears to be reasonable, and the time committed to such work appears to be reasonable. Accordingly, the undersigned will not adjust Dr. Rangan's fee request.

**In total, petitioners' attorneys' costs will be reduced by $4,912.50, resulting in final attorneys' costs of $40,973.67.**

### e. Petitioners' Costs

Petitioners are requesting reimbursement for personal costs incurred in retaining experts in the amount of $10,050.00. Petitioners filed a statement of personal costs, stating that this amount was used for expenses covering expert fees, postage, and copying costs. Pet'r. Fee App. at 178. As this amount is documented by an invoice and receipt, petitioners shall be reimbursed for the full amount requested.

### III. Conclusion

In accordance with the above, I hereby grant petitioners' application for final attorneys' fees and costs and award the following in reasonable attorneys' fees and costs:

1. **A lump sum in the amount of $105,853.22 in final attorneys' fees and costs, to be paid through an ACH deposit to petitioners' counsel's (Mr. Michael Firestone) ILOTA account for prompt disbursement.**

2. **A lump sum payment in the amount of $10,050.00 in final petitioners' costs to be paid through an ACH deposit to petitioners' counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

7